◼ In the Matter of D.J.H. CONSTRUCTION, INC., Petitioner, v RODERICK G. W. CHU et al., Constituting the Tax Commission of the State of New York, Respondents.—Levine, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of the State Tax Commission which sustained sales and use tax assessments imposed under Tax Law articles 28 and 29.

Petitioner is a construction company specializing in the installation of large diameter concrete pipe for use in municipal water and sewer systems. The Department of Taxation and Finance commenced a sales and use tax field audit of petitioner in early 1980 for the period beginning June 1, 1976 and ending May 31, 1980. In response to a written request from the Department's auditor, petitioner executed consents extending the statutory period for the Department's determination of sales and use taxes due (see, Tax Law § 1147 [c]) for the period June 1, 1976 through February 28, 1980, to September 20, 1980, and for the period September 1, 1977 through February 28, 1980, to June 20, 1981. The Audit Division of the Department issued notices of determination of taxes due on September 15, 1980 and June 18, 1981, assessing additional sales and use taxes against petitioner totaling $57,698.36 for the period June 1, 1976 to August 31, 1977, and $29,708.09 for the period August 31, 1977 to February 28, 1980, plus interest. Working under a deadline to meet the time limits of the extensions of the periods of limitation, the Department's auditor was unable to break down the assessments into quarterly periods. Therefore, he averaged the total assessments over the number of quarterly periods covered, and the notices of determination thus reflected equal taxes due for each quarterly period, but totaled accurately the entire deficiencies found.

In succeeding petitions to the State Tax Commission, petitioner administratively challenged the September 1980 and June 1981 notices of determination, alleging that the quarterly assessments were arbitrary as being based upon estimates, rather than a true audit, and that sales and use taxes were imposed upon statutorily exempt transactions. The Department filed an answer essentially conceding that the averaging of the total deficiencies by quarters was erroneous. It denied that any of the transactions were exempt. The answer

affirmatively alleged that sales and use taxes were due, based upon a recalculation of the tax to reflect the actual amount due each quarterly period, except that no assessment exceeded the amount set forth in the original notices for each quarter. The answer also alleged that some $2,400 was additionally due, based upon a third notice of determination dated November 3, 1982 for the period August 31, 1978 through February 28, 1980. Subsequently, the Department issued a fourth notice of determination, dated June 14, 1983, asserting a deficiency of $91,678.68 (later reduced ˙to $89,769.59) for petitioner's fiscal year ending May 31, 1980. This was also administratively challenged in a petition to the Tax Commission.

After consolidated hearings on all of the assessments, the Tax Commission upheld the Department's determinations, except with respect to certain purchases for which there was proof that sales taxes were paid and as to items which the proof established were not acquired by petitioner during the audited periods. Petitioner then brought this CPLR article 78 proceeding challenging the Tax Commission's determination, which has been transferred to this court.

At the outset, we reject petitioner's contention that the ultimate assessments cumulatively covering the periods June 1, 1976 to February 28, 1980 were time barred (see, Tax Law § 1147 [b]). The statutory periods of limitation were validly extended by the consents petitioner executed. The September 1980 and June 1981 notices of determination were issued within the extensions granted. Despite the fact that the notices concededly were inaccurate as to the tax deficiencies on a quarterly basis, because of the improper averaging of the sales and use taxes due for the entire audited periods, the totals were based, not on an estimate, but upon a detailed audit which was substantially accurate according to the information petitioner had then furnished the State auditor. The notices adequately apprised petitioner of the aggregate deficiencies asserted for the relevant periods and of the need to pursue its administrative remedies to contest the assessments. Thus, the September 1980 and June 1981 notices of determination validly complied with the statutory time requirements, as extended under petitioner's consents (see, Matter of Pepsico, Inc. v Bouchard, 102 AD2d 1000, 1001). We likewise find that petitioner failed to sustain its burden of establishing entitlement to exemptions for its purchases of hay applied to reseeded areas at its work sites (see, Tax Law § 1115 [a] [15]) and as to photographs and informational signs at such sites which it was required to furnish under its contracts with various

municipalities *(see,* Tax Law § 1116 [a] [1]; 20 NYCRR 541.2 [c]).

We reach a contrary conclusion with respect to petitioner's entitlement to an exemption from sales and use taxes under Tax Law § 1115 (a) (12) on its substantial purchases of equipment and machinery for the production of concrete pipe. The uncontested evidence, and the findings of the Tax Commission, were that in about 1976 petitioner made a business decision to embark upon an enterprise of large scale manufacturing of pipe, in addition to petitioner's construction operations. Accordingly, beginning in about 1978, petitioner purchased millions of dollars worth of equipment and installed a plant having the capacity to produce some 770,000 tons of concrete pipe annually. Petitioner's needs for concrete pipe for its own construction operations were at most 500 tons a year. Once the plant was fully operational in 1979, petitioner actively sought to obtain pipe business through solicitation of and bids to companies awarded sewer and water line contracts, and employed sales staff for that purpose. Unfortunately, by the time of the hearings herein, these efforts proved totally unsuccessful. This was essentially attributable to general economic conditions and the cessation of governmental funding of sewage disposal and water conservation projects. Since then, the plant and its equipment have been used only on a limited basis to supply the needs of petitioner's construction business, which comprise only a miniscule percentage of the plant's capacity.

Tax Law § 1115 (a) (12) exempts from sales and use taxes receipts from the sale of "[m]achinery or equipment for use or consumption directly and predominately in the production of tangible personal property * * * for sale, by manufacturing". The Tax Commission held that, because of the lack of sales of the concrete pipe products of the plant to outsiders in the years subsequent to acquisition, the plant was not used predominately (i.e., at least 50% of the time) in the production of tangible property for sale. Therefore, according to the Tax Commission, petitioner's acquisition was not exempt, despite the fact, implicit in the Tax Commission's findings, that petitioner's purpose at the time of purchase and installation undoubtedly was to employ the plant predominately to produce pipe for sale. In our view, the Tax Commission has clearly misinterpreted the statutory exemption, both as to its literal language and in the context of the sales and use tax article (Tax Law art 28) as a whole. Receipts from the sale of machinery and equipment are exempt if the items are pur-

chased *"for use * * * predominately in the production of tangible personal property * * * for sale"* (Tax Law § 1115 [a] [12] [emphasis supplied]). Read literally, entitlement to the exemption turns on the purpose of acquisition at the time of sale. Later events, while perhaps relevant to ascertain the buyer's intent at the time of sale, should not be determinative of whether the exemption applies. This is consistent with the general statutory scheme of Tax Law article 28, as otherwise interpreted by the Tax Commission, which fixes the incidence of the tax at the time of sale. The Tax Commission's regulations provide that "[t]he sales tax is a 'transactions tax,' liability for the tax accruing at the time of the transaction" (20 NYCRR 525.2 [a] [2]). Similarly, the compensating use tax becomes payable upon physical acquisition of property in the State. "Use" is statutorily defined as "[t]he exercise of any right or power over tangible personal property by the purchaser thereof and includes * * * the receiving * * * of such property" (Tax Law § 1101 [b] [7]). Under the Tax Commission's regulations, to receive property "is to obtain or gain possession of tangible personal property * * * by means of purchase" (20 NYCRR 526.9 [b] [1]).

The Tax Commission's entire reliance in denying the exemption upon economic circumstances subsequent to petitioner's acquisition of the plant and equipment, rather than merely as providing evidence of the purpose of the buyer at the time of sale, is not only inconsistent with the statute, but administratively unworkable. As previously demonstrated, the taxable event here was the purchase or first acquisition of physical possession of the pipe-producing equipment by petitioner, and it was then that liability for sales and use taxes had to be adjudged. At that point, petitioner was either entitled to the exemption or was not. The Tax Commission's interpretation, in which eligibility for the exemption turns exclusively on the taxpayer's subsequent history of use of the equipment in production, leaves totally uncertain the period during which the record of production will be examined. It is noteworthy that when the Legislature decided that taxability will turn on postsale events, it did so explicitly and specified the relevant period *(see,* Tax Law § 1111 [b] [1], [2]).

The foregoing is not inconsistent with this court's decision in *Matter of Midland Asphalt Corp. v Chu* (136 AD2d 851, *lv denied* 72 NY2d 806), principally relied upon by the Tax Commission, for in that case the evidence was that, *at the time of acquisition* of the subject equipment used to produce the taxpayer's asphalt emulsion, 90% of its contemplated use

was in connection with its business of providing the service of applying the asphalt to road surfaces, rather than selling its asphalt product to others (supra, at 853). Thus, in *Matter of Midland Asphalt Corp.* we upheld the Tax Commission's finding that the equipment in question was not purchased for use predominately in the production of tangible personal property for sale.

Since, under the Tax Commission's own findings, we conclude that petitioner was exempt from sales and use taxes with respect to the plant, machinery and equipment acquired to produce concrete pipe, the determination must be annulled to that extent and remitted for administrative redetermination consistent with that ruling. Were we to have held otherwise, remittal would still have been necessary because the Tax Commission's decision does not explain why petitioner's assessments under the September 1980 and June 1981 notices of determination should not have been reduced to reflect the Department's concession in its answer to petitioner's perfected petition to the Tax Commission, and does not resolve the question of whether and to what extent the Department's notice of determination dated November 3, 1982 may be duplicative of earlier assessments the Tax Commission also sustained.

Determination annulled, with costs, and matter remitted to the State Tax Commission for further proceedings not inconsistent with this court's decision. Kane, J. P., Weiss, Mikoll, Levine and Mercure, JJ., concur.